UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID PRATT,

        Plaintiff,                                                Hon. Janet T. Neff

v.                                                            Case No. 1:13-CV-872

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

        The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 48 years of age on his alleged disability onset date. (Tr. 184). He successfully completed high school and worked previously as a fast food cook, car wash attendant, and service station attendant. (Tr. 26, 337). Plaintiff applied for benefits on December 15, 2009, alleging that he had been disabled since December 1, 2009, due to sciatica, COPD, "problems" with his back, hip, and right knee, and learning disability. (Tr. 184-93, 207). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 65-183). On September 29, 2011, Plaintiff appeared before ALJ James Goodman with testimony being offered by Plaintiff and a vocational expert. (Tr. 32-54). In a written decision dated November 7, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 17-27). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-10). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On October 1, 2009, Plaintiff participated in a CT scan of his abdomen and pelvis the results of which were "normal." (Tr. 297). On November 9, 2009, Dr. Christina Helms reported that Plaintiff has "a work restriction of lifting no more than 15 pounds [which] is in effect for the next 6 months." (Tr. 335).

On February 16, 2010, Plaintiff participated in a consultive examination conducted by Steve Geiger, Ph.D. (Tr. 336-40). Plaintiff reported that he was unable to work because he is "really poor at reading" and has "a 15 pound weight limit after I pulled muscles in my back at work

(Wendy's as a cook) a year ago." (Tr. 336). Plaintiff reported that he was not depressed, but was experiencing difficulty with concentration and loss of interest in life activities. (Tr. 336). Plaintiff reported that he "used to have a problem with cocaine, meth and heroine" as well as "being in trouble with the law." (Tr. 336-37). Specifically, Plaintiff reported:

> I guess I have been arrested 6-7 times, 4 times for drunk driving the last was 2000. A few times for drunk in public. CSC arrest in the mid-2000's and I served 10 months and 3 years probation.

(Tr. 337).

The results of a mental status examination were unremarkable. (Tr. 338-39). The doctor diagnosed Plaintiff with nicotine dependence and polysubstance dependence. (Tr. 339). Plaintiff's GAF score was rated as 63.[1] (Tr. 339). The doctor also reported that Plaintiff "could understand and follow simple instructions and could perform simple routine tasks...could handle reasonable levels of work pressure and stress...[and] could effectively communicate with coworkers, customers and supervisors." (Tr. 339).

On February 25, 2010, Plaintiff participated in a consultive examination conducted by Dr. R. Scott Lazzara. (Tr. 342-46). Plaintiff reported he was experiencing "chronic sciatica and back problems for the past year as well as problems in his right hip and knee." (Tr. 342). Plaintiff also reported that "he has not had any physical therapy or treatment." (Tr. 342). Plaintiff reported that he last worked in December 2009, but "was let go at the time because of insubordination." (Tr. 342). Plaintiff reported that he "is able to do activities of daily living...is able to drive...[and] is able

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A score of 63 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 32.

to cook and do household chores." (Tr. 342). The results of a musculoskeletal examination revealed the following:

> There is no evidence of joint laxity, crepitance, or effusion. Grip strength remains intact. Dexterity is unimpaired. The patient could pick up a coin, button clothing, and open a door. The patient had no difficulty getting on and off the examination table, mild difficulty heel and toe walking, mild difficulty performing a partial squat and mild difficulty standing on either foot. Straight leg raising is negative. There is paravertebral muscle spasm. There is lumbar spine straightening with tenderness over the paravertebral muscles.

(Tr. 343).

> A neurological examination revealed the following:
>
> Cranial nerves are intact. Motor strength and tone are normal. Sensory is intact to light touch and pinprick. Reflexes are 2+ and symmetrical. Romberg testing is negative. The patient walks with a normal gait without the use of an assist device.

(Tr. 345).

> The doctor concluded that:
>
> Much of this appears to be ligamentous in origin. I did not find any active radicular symptoms today. His gait is stable. He has mild difficulty performing orthopedic maneuvers mostly because of spasm and pain. He does not require the use of an assistive device. He does complain of associated right hip and knee pain but I did not find any significant pathology. At this point more aggressive pain management and more aggressive anti-inflammatory treatment would be a benefit. In the short-term avoidance of any repetitious squatting, stooping, bending or twisting would be indicated. Long-term with appropriate treatment his long-term prognosis would be good.

(Tr. 345).

On March 11, 2010, Dr. Helms reported that Plaintiff was experiencing degenerative joint disease with "no herniation" and "mild stenosis" at L2. (Tr. 350). The doctor further

5

concluded, however, that Plaintiff was "unable to work > 80% of time from 4/21/08 - current at any job." (Tr. 349). The doctor also reported that Plaintiff was unable "to lift, carry, walk long time." (Tr. 349).

On March 17, 2010, Dr. Ashok Kaul completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 355-68). Determining that Plaintiff suffered from a reading disability and polysubstance abuse, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.02 (Organic Mental Disorders) and Section 12.09 (Substance Addiction Disorders) of the Listing of Impairments. (Tr. 356-64). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular Listings. (Tr. 365). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. (Tr. 365).

Dr. Kaul also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 351-53). Plaintiff's abilities were characterized as "moderately limited" in eight categories. (Tr. 351-52). With respect to the remaining 12 categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 351-52). The doctor concluded that Plaintiff "is capable of [performing] simple, routine, repetitive tasks." (Tr. 353).

On February 22, 2011, Plaintiff participated in an MRI examination of his cervical spine, the results of which revealed "minor" degenerative changes as well as "mild" stenosis and a "small" herniation at C4-C5. (Tr. 407-08). Treatment notes dated April 21, 2011, indicate that

Plaintiff was instructed to perform back and shoulder exercises. (Tr. 405). X-rays of Plaintiff's right shoulder, taken June 16, 2011, revealed "mild widening of the right acromioclavicular joint," but "the right shoulder is otherwise unremarkable." (Tr. 402).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national

---

[2]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) back pain; (2) right shoulder pain; (3) hepatitis C; (4) nicotine dependence; (5) polysubstance abuse and dependence; and (6) reading deficit, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 20-22).

The ALJ next determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he must alternate sitting and standing every two hours; (2) he can occasionally bend, stoop, squat, kneel, crawl and climb; (3) he can frequently balance; (4) he cannot perform complex technical work, but he can perform a full range of simple, routine, and repetitive work; (5) he can work at a stress level of 5-6 on a scale of 1-10, where 1 is described as a night dishwasher as this occupation exists in the national economy, and 10 is described as the work of an air traffic controller as this occupation exists in the national economy. (Tr. 22).

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to

8

question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed in the national economy approximately 159,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.[3] (Tr. 49-52). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

**I.       Plaintiff has Waived any Argument Regarding Sentence Six Remand**

As part of his request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 1-10, 432-545). The Appeals Council received the evidence into the record and considered it before declining to

---

[3] The vocational expert initially testified that there existed approximately 242,000 jobs which such a person could perform, but subsequently added that this number would be reduced by "a quarter to a third" if the individual in question needed to "alternate sitting and standing." (Tr. 51).

9

review the ALJ's determination. This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden of making these showings. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

Plaintiff has not requested that the Court remand this matter for consideration of this evidence. Plaintiff has, therefore, waived any such argument. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same).

**II.       The ALJ's Assessment of the Medical Opinions is Supported by Substantial Evidence**

As noted above, Plaintiff's treating physician, Dr. Helms, offered opinions regarding Plaintiff's condition and limitations. On November 9, 2009, the doctor reported that Plaintiff has "a work restriction of lifting no more than 15 pounds [which] is in effect for the next 6 months." On March 11, 2010, Dr. Helms reported that Plaintiff was "unable to work. . .at any job" for more than 80 percent of the time between April 21, 2008, and March 2010. The doctor further reported that Plaintiff was unable "to lift, carry, walk long time." (Tr. 349). The ALJ afforded "little weight" to Dr. Helms opinions. (Tr. 23). Plaintiff asserts that he is entitled to relief because the ALJ discounted Dr. Helms' opinion "without proper evaluation."

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial

medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered

those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

The ALJ discounted Dr. Helms' November 2009 opinion on the ground that the limitation in question, lifting no more than 15 pounds, was expressly imposed for only a temporary period of time which expired long before the ALJ rendered his opinion. (Tr. 23). It must be noted that Dr. Helms did not extend or otherwise perpetuate this particular limitation. As for the doctor's March 2011 opinion that Plaintiff was "unable to work. . .at any job" for more than 80 percent of the time between April 21, 2008, and March 2010, such is entitled to no deference whatsoever because the determination as to whether a claimant is disabled is a matter reserved exclusively to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1). As for the doctor's opinion that Plaintiff was unable "to lift, carry, walk long time," such is entitled to no deference as such is meaningless. Rather than articulate specific limitations with respect to Plaintiff's ability to lift, carry, or walk, the doctor instead advanced a hopelessly vague and ultimately meaningless "restriction." Nevertheless, as the ALJ concluded, to the extent that Dr. Helms is of the opinion that Plaintiff experiences greater limitations than recognized by the RFC determination such is contradicted by the medical evidence of record. Thus, the ALJ's decision to discount Dr. Helms' opinions is supported by substantial evidence.

Plaintiff also takes issue with the ALJ's assessment of the findings reported by Dr. Geiger and Dr. Lazzara. Specifically, Plaintiff asserts that he is entitled to relief because the ALJ failed to adopt in full the findings or opinions offered by these doctors. Specifically, Plaintiff faults the ALJ for failing to adopt Dr. Lazzara's opinion that Plaintiff can only occasionally bend and squat

and cannot carry, push, or pull more than 10 pounds.[4] (Tr. 347). Plaintiff also faults the ALJ for failing to adopt Dr. Geiger's finding that Plaintiff "would have difficulty working in jobs that required reading." (Tr. 339).

First, these doctors examined Plaintiff on only a single occasion each and, therefore, are not treating physicians whose opinions are entitled to deference. Moreover, Plaintiff has identified no authority that obligates the ALJ to adopt in full the opinions or findings of a consultive physician. Rather, as Defendant correctly notes, the ALJ is tasked with weighing and evaluating the evidence and determining each claimant's RFC. The ALJ did that in this case and his RFC determination is supported by substantial evidence. Accordingly, this argument is rejected.

**III.      The ALJ Properly Relied on the Vocational Expert's Testimony**

Pursuant to Social Security Ruling 00-4p, if a vocational expert offers testimony that conflicts with information contained with the Dictionary of Occupational Titles (DOT), the ALJ "must resolve this conflict before relying on the [vocational expert's testimony] to support a determination or decision that the individual is or is not disabled." Social Security Ruling 00-4p: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704 at *4 (S.S.A., Dec. 4, 2000).

Plaintiff argues that "the sit/stand option provided for by the ALJ in the hypothetical questioning is not accounted for in the DOT." Plaintiff asserts, therefore, that because the ALJ failed to resolve this apparent conflict, the ALJ improperly relied on the vocational expert's testimony.

---

[4] Plaintiff's assertion that Dr. Lazzara recognized these particular limitations is based upon the doctor's hand written notes included in the "comments" section of a form he completed as part of his examination. (Tr. 347). It is not clear that Plaintiff's interpretation of these hand written notes is accurate, but for present purposes the Court will assume that such is the case.

With respect to whether there existed any conflict between the vocational expert's testimony and the DOT, the ALJ concluded:

> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. However, I note that the vocational expert did testify that the claimant's sit/stand option would reduce the numbers of jobs available by 25 percent.

(Tr. 27).

As courts recognize, "[b]ecause the DOT does not address the subject of sit/stand options," testimony from a vocational expert that there exist jobs which a claimant, subject to a sit/stand limitation, can perform is not in conflict with the DOT. *See, e.g., Zblewski v. Astrue*, 302 Fed. Appx. 488, 494 (7th Cir., Dec. 15, 2008). As the vocational expert's testimony in this matter did not conflict with the DOT, the ALJ was under no obligation to question the vocational expert about the matter.

Moreover, as courts also recognize, Plaintiff had an affirmative obligation to question the vocational expert if he believed that there existed a conflict between his testimony and the DOT. *See Beinlich v. Commissioner of Social Security*, 345 Fed. Appx. 163, 168-69 (6th Cir., Sept. 9, 2009) (where plaintiff "had the opportunity to cross-examine the [vocational expert] and bring out any conflicts with the DOT. . .[t]he fact that plaintiff's counsel did not do so is not grounds for relief"); *Ledford v. Astrue*, 311 Fed. Appx. 746, 757 (6th Cir., Dec. 19, 2008) (where claimant "did not bring to the attention of the [ALJ] the alleged conflict between the oral testimony and the job descriptions in the [DOT]," the court observed that "nothing in applicable Social Security regulations requires the [ALJ] to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of

15

the [ALJ]"). Plaintiff was represented by counsel at the administrative hearing, but counsel failed to question the vocational expert on this matter or bring such to the attention of the ALJ. (Tr. 32-54). In sum, therefore, the Court discerns no error in the ALJ's questioning of the vocational expert or in his reliance on the vocational expert's testimony.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: August 29, 2014        /s/ Ellen S. Carmody
                             ELLEN S. CARMODY
                             United States Magistrate Judge